Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| *NICE REALTY GROUP, LLC*; INVERSIONES B TRES, INC.<br>**Apelados**<br><br>V.<br><br><br>ORIENTAL BANK PUERTO RICO<br><br>**Apelante** | KLAN202400644 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil. Núm. SJ2021CV06149<br><br>Sobre:<br>Dolo, Mala Fe y Negligencia en el Cumplimiento de Contrato de Opción de Compra |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard.

**Hernández Sánchez, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 3 de octubre de 2024.

El 8 de julio de 2024, Oriental Bank de Puerto Rico (Oriental o apelante) compareció ante nos mediante un recurso de *Apelación* y solicitó la revisión de una *Sentencia* que se emitió y notificó el 6 de mayo de 2024 por el por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Solicitud de Sentencia Sumaria* que presentaron Nice Realty Group, LLC (Nice Realty) e Inversiones B Tres, Inc. (Inversiones B Tres) (en conjunto, los apelados) y No Ha Lugar a la *Moción de Sentencia Sumaria* que presentó Oriental. En consecuencia, declaró Ha Lugar la *Demanda.*

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

I.

El 22 de septiembre de 2021, los apelados presentaron una *Demanda* sobre dolo, mala fe y negligencia en el cumplimiento de

contrato de opción de compra en contra de Oriental.[1] Alegaron que, el 18 de mayo de 2017 suscribieron un *Contrato de Opción de Compra* con Scotiabank, ahora Oriental, sobre una propiedad ubicada en el condominio Astralis, apartamento, 815 en Carolina, Puerto Rico. El precio de compraventa pactado fue de $180,000.00. Sostuvieron, que como parte de la opción entregaron un cheque por la cantidad de $5,400.00 como prima. Indicaron que, entre mayo de 2017 a abril de 2020, Scotiabank continuó informando el estado procesal de las propiedades opcionadas, toda vez que la representación legal de Scotiabank no había dado el visto bueno para el cierre. No obstante, esbozaron que el 5 de mayo de 2020, la propiedad fue vendida a un tercero por la cantidad de $119,527.00. Enfatizaron que, posteriormente, dicho tercero, vendió la propiedad a otro comprador por el precio de $299,000.00.

Por otra parte, señalaron que el 19 de mayo de 2019, Scotiabank y Nice Realty otorgaron un *Contrato de Opción de Compra* sobre una propiedad ubicada en el condominio Le Rivage, apartamento 75, Condado, Puerto Rico y, que, al otorgar el contrato, entregaron un cheque de gerente de $6,000.00. Plantearon que, al igual que el contrato del condominio Astralis, este tenía un periodo de quince (15) días para ejercer la opción. Sostuvieron que, se mantuvieron realizando gestiones para el otorgamiento del contrato. Sin embargo, se les informó que no se había completado el proceso de lanzamiento del apartamento, por lo que Oriental procedió a devolver el dinero del depósito de la opción.

Así las cosas, señalaron que Oriental incurrió en dolo contractual, mala fe y negligencia al rehusarse a cumplir con la obligación de vender las propiedades bajo los términos estipulados en la opción. Respecto a la venta de la propiedad del condominio

---

[1] Véase, págs. 30-37 del apéndice del recurso.

Astralis, enfatizaron que les causaron pérdidas económicas y se vieron privados de realizar una inversión, la cual les generaría ganancias de reventa. En cuanto a la propiedad del condominio Le Rivage, argumentaron que Oriental utilizó como subterfugio impedimentos regulatorios internos del banco para no cumplir con lo pactado. Por todo lo anterior, solicitaron una indemnización por concepto de daños y perjuicios por el incumplimiento de las obligaciones contractuales y el pago de las ganancias dejadas de percibir, por una suma no menor de $119,000.00 por el contrato de opción del condominio de Astralis y, que se ordenara el cumplimiento específico del contrato de opción de compra de la propiedad en Le Rivage.

En respuesta, el 19 de noviembre de 2021, Oriental presentó su *Contestación a Demanda* en la cual negó la mayoría de las alegaciones.[2] Como defensas afirmativas, adujo que no actuó de forma dolosa, negligente o en contravención a alguna relación contractual. Apuntó, que la causa de acción de los apelados era en contra de un tercero. A su vez, expuso que aplicaba la doctrina de imposibilidad sobrevenida y la doctrina de condición resolutoria implícita en el curso de los negocios entre las partes. Por último, indicó que la reclamación de los apelados estaba limitada por los términos contractuales acordados entre las partes.

Tras varios trámites procesales los cuales no son necesarios pormenorizar, el 1 de febrero de 2024, Oriental presentó una *Moción de Sentencia Sumaria.*[3] En esencia, arguyó que en ambos contratos de opción se pactó que, de no concretarse la compraventa por causas atribuibles a la vendedora, el único remedio que los apelados tenían disponible era la devolución de la prima. Sostuvo que procedió a devolver la prima de $5,400 correspondiente al contrato

---

[2] Íd., págs. 38-45.
[3] Íd., págs. 114-661.

de Astralis y $6,600 correspondiente al contrato de Le Rivage. Enfatizó, que el lenguaje sobre el remedio único de la devolución de la prima era especifico, por lo que los apelados con su firma consintieron a ese remedio en particular. Por último, señaló que los apelados renunciaron a entablar una acción judicial.

En la misma fecha, a saber, el 1 de febrero de 2024, Nice Realty e Inversiones B Tres presentaron su *Moción de Sentencia Sumaria*.[4] En esencia, solicitaron que el foro primario determinara que Oriental estaba obligado a vender las propiedades bajo el principio de *pacta sunt servanda*. Además, plantearon que el TPI debía determinar que el incumplimiento de los contratos de opción generaba una causa de acción en daños y perjuicios a su favor.

De igual forma, esbozaron que Oriental pretendía que las cláusulas del contrato relativas a la devolución de la prima se interpretaran como único remedio de forma acomodaticia. Aclararon que, en ningún momento consintieron a que el único remedio fuera la devolución de la prima. A su vez, argumentaron que los actos de Oriental demostraban un incumplimiento voluntario e intencional al vender la propiedad a un tercero y, que dicho acto derrotaba la premisa de no poder completar el proceso de compraventa. Por todo lo anterior, plantearon que los actos de Oriental fueron dolosos y atentaban contra la buena fe contractual.

En respuesta, el 4 de marzo de 2024, Oriental presentó su *Oposición a Solicitud de Sentencia Sumaria* en la cual reiteró sus planteamientos iniciales de la moción de sentencia sumaria.[5] Mediante dicha moción, alegó que los contratos eran claros y, no existía incertidumbre respecto a los remedios disponibles. Aclaró, que diseñar otro remedio sería contrario al concepto de libertad de

---

[4] Íd., págs. 662-708.
[5] Íd., págs. 709-729.

contratación. Finalmente, insistió que no procedía la solicitud de sentencia sumaria que presentaron los apelados.

De igual forma, el 4 de marzo de 2024, los apelados presentaron su *Oposición a Solicitud de Sentencia Sumaria.*[6] En ella, reiteraron los argumentos presentados en su moción de sentencia sumaria. En lo pertinente, esbozaron que la venta a un tercero de una propiedad que estaba opcionada, no podía ser interpretado como una imposibilidad para cerrar la compraventa, toda vez que la misma fue provocada por Oriental. Además, plantearon que Oriental no brindó la oportunidad de perfeccionar el contrato de opción al vender la propiedad a un tercero y tampoco de extender el término de la opción.

Luego de examinar los argumentos presentados por las partes, el 6 de mayo de 2024, el TPI emitió y notificó una *Sentencia.*[7] En primer lugar, determinó que no existía controversia sobre los siguientes hechos:

1. Inversiones B Tres se dedica a la compra y venta de propiedades. El negocio de Inversiones B Tres es comprar propiedades y rehabilitarlas para generar dinero vendiéndolas.

2. Mayormente, Inversiones B Tres compra propiedades a instituciones bancarias, a fondos de inversiones y/o las adquiere mediante subastas.

3. Nice Realty se dedica a comprar propiedades y repararlas para luego revenderlas.

4. La parte demandada, Oriental Bank es una institución bancaria debidamente organizada y existente, al amparo de las leyes del Estado Libre Asociado de Puerto Rico. Su dirección física y postal es: #254 Avenida Muñoz Rivera, Esq. Carlos Chardón, San Juan, Puerto Rico 00918; P.O. Box 364745, San Juan, Puerto Rico 00936-4745 y teléfono 787-771-6800.

5. El 31 de diciembre de 2019, Scotiabank se fusionó con Oriental Bank, resultando Oriental como la entidad subsistente luego de la fusión.

---

[6] Íd., págs.730-795.
[7] Íd., págs. 1-17.

6. Oriental Bank es el sucesor en derecho de la entidad bancaria Scotiabank.

7. La modalidad usual de las adquisiciones de las propiedades con Scotiabank era que Inversiones B Tres y/o Nice Realty suscribía –o suscribían en conjunto– un contrato titulado contrato de opción y luego de que el banco tuviera listo el título y el tracto de la propiedad, entonces, procedía la compraventa.

8. En algunos contratos titulados como contratos de opción el banco todavía no era el dueño de la propiedad.

9. En los contratos de opción Inversiones B Tres y/o Nice Realty siempre daba el cheque de opción o la prima al momento de la firma.

10. En algunas ocasiones en que se suscribía un "contrato de opción", la compraventa no llegaba a concretarse. Esto sucedía cuando el banco no podía obtener el título de la propiedad, ya sea porque los procesos judiciales no se llevaron a cabo de manera correcta, porque las subastas fueron nulas, o porque el banco renegociaba con los clientes y reinstalaba el préstamo.

11. Fuera de este pleito, al menos en cuatro ocasiones Inversiones B Tres y/o Nice Realty no pudieron cerrar la compraventa por una propiedad opcionada con Scotiabank. Concretamente, esas propiedades fueron las siguientes: (a) H-5 Calles Olas, Urb. Valle Costero, Santa Isabel; (b) Urb. Jardines de Country Club AD-4 Calle 27, Carolina; (c) Bo. Ciénaga Alta PR-959 Km 3.2 #9, Río Grande; y (d) Urb. Mansiones de Hacienda Jiménez A-9, Calle Eucalipto, Río Grande.

12. En todas las situaciones descritas en el párrafo anterior, Scotiabank le devolvió el depósito de opción (prima), sin más.

13. Como parte del descubrimiento de prueba en este caso Inversiones B Tres proveyó un listado de sesenta y tres (63) propiedades que opcionó con Scotiabank y, además, la fecha en que se llevó a cabo la compraventa luego de firmado el contrato de opción. De las que se concretó la compraventa surgía que, en su gran mayoría, los cierres sucedían entre dos semanas y un mes de haber suscrito el contrato de opción. A su vez, entre la fecha de opción y la fecha de compraventa ninguna propiedad que logró cerrarse excedió del período de un (1) año, es decir, la compraventa a Inversiones B Tres se llevó a cabo dentro del mismo año en que ésta suscribió el contrato de opción.

14. A su vez, como parte del descubrimiento de prueba en este caso Nice Realty proveyó un listado de sesenta y tres (63) propiedades que opcionó con Scotiabank y, además, la fecha en que se llevó a

cabo la compraventa luego de firmado el contrato de opción. De las que se concretó la compraventa surgía que, en su gran mayoría, los cierres sucedían entre dos semanas y un mes de haber suscrito el contrato de opción. A su vez, entre la fecha de opción y la fecha de compraventa ninguna propiedad que logró cerrarse excedió del período de un (1) año, es decir, la compraventa a Nice Realty se llevó a cabo dentro del mismo año en que ésta suscribió el contrato de opción.

15. El otorgamiento de la escritura de compraventa por parte de Inversiones B Tres y Nice Realty de las propiedades con contrato de opción estaba condicionado a que el banco estuviese en posición de tener un tracto para vender. A su vez, podía surgir un aspecto legal que tornara improcedente la compraventa.

16. Dos ejemplos que Nice Realty consideraba como imposibilidades para llevar a cabo una compraventa, eran: no tener la titularidad de la propiedad o no tener el tracto.

   *i. Hechos relacionados al apartamento 815 del condominio Astralis*

17. El 18 de mayo de 2017 Scotiabank de Puerto Rico, ahora Oriental, y Nice Realty e Inversiones B Tres firmaron un contrato titulado "Contrato de Opción de Compra" sobre la propiedad sita en el Condominio Astralis, Apartamento 815, Carolina, Puerto Rico.

18. El señor Pedro Sepúlveda compareció como representante de Inversiones B Tres y el señor Ernesto Corchado como representante de Nice Realty. Ambos leyeron el contrato antes de firmarlo.

19. En el mencionado contrato Scotiabank —ahora Oriental— compareció como "vendedora" y Nice e Inversiones B Tres comparecieron como "optantes".

20. El precio de compraventa convenido fue de $180,000. A su vez, se estableció que la prima de la opción era $5,400.00.

21. El 18 de mayo de 2017, Nice Realty suscribió un cheque de $5,400 a favor de Scotiabank (Oriental) que se entregó en el acto.

22. Los demandantes entregaron el cheque para ejercer la opción prestos a otorgar la escritura de compraventa, ya que contaban con los fondos disponibles.

23. En febrero 2019, Scotiabank estuvo informando a los demandantes sobre el estado procesal de las distintas propiedades opcionadas.

24. En el aludido contrato las partes establecieron una serie de circunstancias que constituirían justa causa para dejar sin efecto la compraventa. Por ejemplo: que el pago en efectivo del precio de venta no estaría sujeto a condición o evento alguno, o que en un término no mayor de 48 horas Nice Realty e Inversiones B Tres debían acreditar la procedencia legal, legítima y verificable de los fondos si la venta se llegase a realizar en efectivo. Sobre esto último, se pactó que no realizar este acto constituiría causa suficiente para dejar sin efecto la compraventa, quedando a la discreción de Oriental la devolución de la prima. Otra circunstancia en que quedaba a discreción de Oriental la devolución de la prima era de advenir en conocimiento de que Nice Realty e Inversiones B Tres sometieron información falsa, incorrecta o incompleta.

25. Por otra parte, el referido contrato disponía ciertas circunstancias en que Oriental podía retener la prima, a saber: si el optante no comparecía al acto de otorgamiento de la escritura de compraventa; si Nice Realty e Inversiones B Tres manifestaban o demostraban por sus actos que no estaban listos para llevar a cabo la transacción sin que mediara una causa válida y aceptable para Oriental; o si Nice Realty e Inversiones B Tres se arrepentían de llevar a cabo la compraventa por cualquier razón.

26. Por otro lado, en el contrato también se establecieron cinco circunstancias que podrían constituir justa causa para dejarlo sin efecto y con ello devolver la prima. Entre estas circunstancias se encontraba la siguiente:

    (iv) ocurre la imposibilidad de cerrar la compraventa por causa de la VENDEDORA. En este caso, la OPTANTE podrá elegir entre aceptar una extensión del término de la opción, o exigir la devolución de la Prima, renunciando expresamente la OPTANTE a entablar cualquier tipo de reclamación a la VENDEDORA por no haberse podido completar la compraventa de la Propiedad.

27. El 5 de febrero de 2020, Lisandra Oquendo, Oficial de Oriental Bank, le comunicó por correo electrónico a la Sra. Carol Ocasio, representante de los demandantes lo siguiente: "Hola, ninguno resuelto lo legal, San Ignacio en Tribunal aún, Le Rivage problemas con lanzamiento y gravámenes posteriores-Astralis falta orden confirmación". Lisandra Oquendo Aponte, Departamento de Reposeída, Oriental Bank.

28. El 5 de mayo de 2020, la mencionada propiedad fue transferida o cedida a un tercero a pesar de ésta estar opcionada por Scotiabank —ahora Oriental Bank—, a los demandantes de epígrafe por $119,527.00.

29. Este tercero procedió al poco tiempo a vender el inmueble a otro comprador por el precio de $299,000.00. Obteniendo de esa venta una ganancia de $119,000.00.

30. El 20 de mayo de 2020, Oriental le devolvió a Nice Realty la prima de $5,400 que pagó por el derecho de opción.

    *ii. Hechos relacionados al apartamento 7-S del condominio Le Rivage*

31. El 19 de marzo de 2019, Scotiabank de Puerto Rico —ahora Oriental Bank—, y Nice Realty Group, LLC, otorgaron contrato de opción de compra sobre la propiedad ubicada en el Condominio Le Rivage, apartamento 7S, calle Marseille, Condado, Puerto Rico.

32. El señor Ernesto Corchado compareció como representante de Nice Realty y vio el contrato antes de firmarlo.

33. En el aludido contrato Scotiabank (Oriental) compareció como "vendedora" y Nice Realty compareció como "optante".

34. El derecho de opción exclusivo fue por un precio de compra de $220,000.00.

35. Con la otorgación del contrato de opción, los demandantes entregan un cheque de gerente de $6,600.00 como consideración a la opción de compra.

36. Los demandantes ejercieron de inmediato su opción ya que estaban prestos a otorgar la escritura de compraventa, desde el primer día, ya que contaban con los fondos disponibles.

37. En el aludido contrato las partes establecieron una serie de circunstancias que constituirían justa causa para dejar sin efecto la compraventa. Por ejemplo: que el pago en efectivo del precio de venta no estaría sujeto a condición o evento alguno, o que en un término no mayor de 48 horas Nice Realty debía acreditar la procedencia legal, legítima y verificable de los fondos si la venta se llegase a realizar en efectivo. Sobre esto último, se pactó que no realizar este acto constituiría causa suficiente para dejar sin efecto la compraventa, quedando a la discreción de Oriental la devolución de la prima. Otra circunstancia en que quedaba a discreción de Oriental la devolución de la prima era de advenir en conocimiento de que Nice Realty sometió información falsa, incorrecta o incompleta.

38. Por otra parte, el aludido contrato disponía ciertas circunstancias en que Oriental podía retener la

prima, a saber: si el optante no comparecía al acto de otorgamiento de la escritura de compraventa; si Nice Realty manifestaba o demostraba por sus actos que no estaba lista para llevar a cabo la transacción sin que mediara una causa válida y aceptable para Oriental; o si Nice Realty se arrepentía de llevar a cabo la compraventa por cualquier razón.

39. Por otro lado, en el contrato también se establecieron cinco circunstancias que podrían constituir justa causa para dejarlo sin efecto y con ello devolver la prima. Entre estas circunstancias se encontraba la siguiente:

(iv) ocurre la imposibilidad de cerrar la compraventa por causa de la VENDEDORA. En este caso, la OPTANTE podrá elegir entre aceptar una extensión del término de la opción, o exigir la devolución de la Prima, renunciando expresamente la OPTANTE a entablar cualquier tipo de reclamación a la VENDEDORA por no haberse podido completar la compraventa de la Propiedad.

40. La cláusula 4(c) del Contrato de opción expresa lo siguiente:

c. En caso de que el proceso de venta de la propiedad no se pueda completar por causas atribuibles a la VENDEDORA la devolución de la Prima a la Optante constituirá el remedio único y exclusivo para toda y cualquier reclamación que pudieran tener la OPTANTE contra la VENDEDORA por cualquier concepto como resultado del incumplimiento de la VENDEDORA.

41. Desde el día del otorgamiento la parte demandante estaba haciendo gestiones con el Scotiabank y posteriormente directamente con Oriental Bank para el otorgamiento de las escrituras de compraventa.

42. La propiedad sita en el Condominio Le Rivage, apartamento 7-s, calle Marseille, Condado, Puerto Rico fue ejecutada y la escritura de venta judicial fue otorgada el 26 de febrero de 2019, según surge de la escritura número 7 sobre Venta Judicial ante el notario Leo M. Irizarry Román.

43. Oriental admitió en la Contestación a la Demanda que esos contratos de opción de compra solamente requerían que el comprador ejerciera la misma dentro del periodo de quince (15) días de su otorgamiento, las mismas no tenían fecha límite para que el Banco otorgara la escritura de compraventa.

44. El 2 de marzo de 2021, por medio de su asistente, la Sra. Carol Ocasio, el Sr. Ernesto Corchado, en

representación de Nice Realty, envió una carta a Glenda González de Oriental Bank en la que subrayó su deseo de actualizar el contrato de opción de la propiedad Le Rivage.

45. El 15 de junio de 2021, la Sra. María M. Cotto Febo, Special Assets Administration Supervisor de Oriental, le remitió una carta a Nice Realty en la indicó que la compraventa del apartamento 7-S no se podía realizar y que por ello estaría devolviéndole el depósito. A su vez, la señora Cotto Febo indicó que tan pronto estuviese disponible la propiedad Oriental estaría dispuesto a escuchar una nueva oferta.

46. La comunicación de la Sra. Maria M. Cotto, específicamente, expone lo siguiente:

"Estimado Cliente:

Según solicitado por ustedes le informamos que en estos momentos no podemos completar el proceso de lanzamiento del apartamento 7S del Cond. Le Rivage en Condado. No tenemos fecha de lanzamiento y hay que continuar esperando que el tribunal nos indique una fecha para el mismo.

Nos comunicó la administradora del complejo que la persona a quien se le ejecutó el apartamento tiene un caso legal contra el complejo y nos confirma que no se ha llevados sus pertenencias del apartamento. Este caso ha sido contencioso y se espera se agrave en la etapa del lanzamiento. Por lo antes expuesto nos vemos imposibilitados de indicarle fecha para resolver este asunto y completar la compraventa.

Por lo antes expuesto procederemos a devolverles el dinero del depósito de la opción. El mismo excede el límite de tiempo que se nos permite mantener un depósito de la cuenta de opciones del Banco. Una vez la propiedad esté lista para la venta, nos comprometemos a que le permitiremos presentar una nueva oferta antes de sacarla al mercado, la oferta será evaluada a la luz de las nuevas circunstancias de la propiedad incluyendo su valor de mercado de ese momento. No garantizamos el precio de venta actual.

De tener alguna duda o pregunta, favor de comunicarse al (787) 777- 7760 o vía correo electrónico a mmcotto@orientalbank.com.

Cordialmente,
María M. Cotto Febo
Special Assets Administration Supervisor"

47. Oriental procedió a devolverle a Nice Realty el cheque de $6,600 entregado por concepto de prima, pero Nice Realty se negó a aceptarlo.

Conforme a las determinaciones de hechos antes expuestas y el derecho aplicable el TPI determinó que no había controversia de hechos, dado que las partes otorgaron las respectivas primas al momento de suscribir el contrato de opción. En lo pertinente, enfatizó que la parte optante, aquí apelados, cumplieron con ejercer la opción al presentar el cheque de prima dentro del término estipulado de quince (15) días en ambos contratos. Asimismo, concluyó que ambos contratos eran claros al establecer los escenarios en que se podían considerar como justa causa para la resolución del contrato. No obstante, determinó que, la venta a un tercero no se podía interpretar como una imposibilidad para cerrar la compraventa por causa de la vendedora.

Por último, resolvió que los hechos del caso no se podían considerar como justa causa para eximir a Oriental del cumplimiento de lo pactado. Así pues, concluyó que el no llevar a cabo la compraventa por causas de la vendedora, no justificaba como único remedio la devolución de la prima. Puntualizó que, el incumplimiento por parte de la vendedora no se podía catalogar como imposibilidad sobrevenida y que quedó demostrado que Oriental era el dueño de ambas propiedades.

En vista de lo anterior, ordenó a Oriental a pagar la cantidad de $119,000.00, pactado en el contrato de opción referente a la propiedad de Astralis, apartamento 815. A su vez, ordenó a Oriental a vender a los apelados la propiedad ubicada en el condominio Le Rivage, apartamento 7- S, por el precio pactado en el contrato de opción. En consecuencia, declaró Ha Lugar la *Solicitud de Sentencia Sumaria* que presentaron los apelados y No Ha Lugar a la *Moción de*

*Sentencia Sumaria* que presentó Oriental. Así pues, declaró Ha Lugar la *Demanda*.

Inconforme, el 21 de mayo de 2024, Oriental presentó su *Moción de Reconsideración.*[8] En esencia, adujo que la compraventa no se llevó a cabo, toda vez que no tenía el título de las propiedades, según requerido por Nice Realty. Así pues, razonó que la pendencia litigiosa en el caso *Scotiabank v. Font Castro; Le Reviage Realty, Inc,; y Caribbean Real Estate Investment Corporation,* alfanumérico K CD2014-2577, no permitió el lanzamiento de la propiedad, por lo que constituyó una imposibilidad para llevar a cabo la compraventa.

De otra parte, esbozó que devolver la prima a los apelados constituyó un remedio que se ajustó a los contratos suscritos por las partes. Sostuvo que ambos contratos eran claros y que en ellos las partes renunciaban expresamente a entablar cualquier tipo de reclamación por no haberse podido completar la compraventa de la propiedad. Asimismo, reiteró que, el único remedio que podían obtener los apelados era la devolución de la prima.

En respuesta, el 6 de junio de 2024, Nice Realty e Inversiones B Tres, presentaron su *Oposición a solicitud de reconsideración.*[9] En síntesis, alegaron que no existía controversia de hecho con relación a que Oriental era el titular de ambas propiedades y que de forma caprichosa se negó a venderlas. Ello, en incumplimiento con las obligaciones pactadas. Por otra parte, señalaron que la venta a un tercero de una propiedad opcionada, no podía ser interpretada como una imposibilidad para cerrar la compraventa. Por último, arguyeron que nunca renunciaron a su derecho a presentar una reclamación en contra de Oriental por no poder firmar la compraventa y adquirir las propiedades.

---

[8] Íd., págs. 18-23.
[9] Íd., págs. 24-28.

El 4 de junio de 2024, el TPI emitió y notificó una *Resolución* declarando No Ha Lugar a la moción de reconsideración.[10] Aún inconforme, el 8 de julio de 2024, el apelante presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el Tribunal de Primera Instancia al pasar por alto que tanto el contrato de opción para la propiedad Astralis como para la propiedad de Le Rivage establecen que el único remedio disponible ante la imposibilidad de la compraventa es la devolución de la prima, tal como procedió el banco antes de la interposición de la demanda.**
>
> **Erró el Tribunal de Primera Instancia al pasar por alto que tanto el contrato de opción para la propiedad en Astralis como para la propiedad en Le Rivage expresamente vendan que los demandantes puedan recurrir a la vía judicial para procurar remedios que por predisposición contractual no tienen disponibles.**
>
> **Erró el Tribunal de Primera Instancia al no tomar en cuenta diversos hechos incontrovertidos presentados por Oriental en su moción de sentencia sumaria, los que evidencian la imposibilidad para realizar la compraventa para la propiedad en Le Rivage y la aplicación dek único remedio contractualmente disponible en tal caso: la devolución de la prima.**

Atendido el recurso, el 10 de julio de 2024 le concedimos a la parte apelada hasta el 2 de agosto de 2024 para presentar su alegato. Oportunamente, el 16 de agosto de 2024, Oriental presentó su *Alegato de las partes apeladas Nice Realty Group, LLC; e Inversiones B Tres, Inc.* Así las cosas, el 26 de agosto de 2024, emitimos una *Sentencia* en la cual denegamos[11] el recurso de epígrafe y, determinamos lo siguiente:

> Al examinar el expediente ante nuestra consideración, notamos que la llamada apelación impugna un dictamen que no resolvió todos los asuntos que le fueron planteados. Según mencionamos, el omitir una reclamación en la parte dispositiva de una sentencia

---

[10] Íd., pág. 29.
[11] Acogimos la apelación de epígrafe como un *certiorari,* por ser el recurso adecuado para la revisión de la determinación. Sin embargo, para fines administrativos, mantenemos la codificación alfanumérica que la Secretaría de este foro le asignó al caso.

tiene el efecto de mantener tal reclamación viva y pendiente de adjudicación. Por lo tanto, ante la ausencia de una manifestación en la parte dispositiva sobre los daños y perjuicios que alegaron los apelados en la Demanda, nos es forzoso concluir que el TPI dejó viva y pendiente de adjudicación dicha reclamación. Al así proceder, el dictamen del TPI no constituye una sentencia de la cual pueda presentarse un recurso de apelación.

De igual forma, debemos aclarar que el dictamen no es una sentencia parcial, por no cumplir con los requisitos de la Regla 42.3 de las de Procedimiento Civil, supra. Por lo cual, no surge de su dictamen que el TPI tuviera la intención de resolver finalmente una reclamación y continuar con las reclamaciones restantes. Por lo anterior, debemos concluir que el dictamen impugnado es una resolución interlocutoria que no culmina el pleito en su totalidad, por lo cual acogemos el presente como un recurso discrecional de certiorari.

En desacuerdo con la determinación que emitió este foro, el 10 de septiembre de 2024, el apelante presentó su *Moción de Reconsideración.* Alegó que, los apelados presentaron una causa de acción en daños y perjuicios y, que justipreciaron dichos daños en una suma no menor de $119,000.00. Enfatizó que ambas partes solicitaron el remedio sumario total y no parcial. Así pues, reiteró que la suma de $119,000.00 representaba el remedio total de daños solicitados por los apelados en su *Demanda* y en su *Moción de Sentencia Sumaria.* De igual forma, señaló que otorgar una suma mayor a la solicitada, conllevaba a someter a Oriental a la injusticia de una doble compensación que no fue solicitada.

En virtud de lo anterior, el 11 de septiembre de 2024, emitimos una *Resolución* en la cual le concedimos a la parte apelada el término de cinco (5) días para que se expresara con relación a la *Moción de Reconsideración.* Conforme ordenado, el 17 de septiembre de 2024, los apelados presentaron su *Moción en Cumplimiento de Orden.* En síntesis, esbozó que en ningún momento el TPI otorgó la suma de $119,000.00 como una compensación independiente de los daños reclamados. Entiéndase, que la suma de $119,000.00 era la adjudicación final de los daños solicitados por el incumplimiento de

Oriental. Por todo lo anterior, reiteró que procedía confirmar la *Sentencia* que emitió el TPI. Con el beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nuestra consideración. *Veamos.*

## II.

### -A-

Las obligaciones surgen de la ley, los contratos, cuasicontratos y de cualquier otra acción u omisión en la cual medie culpa o negligencia. Art. 1042 del Código Civil, 31 LPRA ant. sec. 2992.[12] Aquellas obligaciones derivadas de un contrato tendrán fuerza de ley para las partes, y deberán cumplirse según se hayan delimitado; *pacta sunt servanda.* Art. 1044 del Código Civil, 31 LPRA ant. sec. 2994. Los contratos son negocios jurídicos que existen desde que concurren los requisitos de consentimiento, objeto y causa. Art. 1213 del Código Civil, 31 LPRA ant. sec. 3391. Una vez las partes consienten en obligarse a cumplir determinadas prestaciones, surge el contrato. Art. 1206 del Código Civil, 31 LPRA ant. sec. 3371; *Amador v. Conc. Igl. Univ. De Jesucristo*, 150 DPR 571, 581-582 (2000). En tal sentido, una vez perfeccionado el contrato, las partes se obligan no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza estén conformes con la buena fe, el uso y la ley. Art. 1210 del Código Civil, 31 LPRA ant. sec. 3375. Consecuentemente, los tribunales no podemos relevar a una parte de cumplir con el contrato cuando éste es legal y válido y no contiene vicio alguno. *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610, 627 (1997).

Ahora bien, en lo pertinente a la controversia ante nos, los contratos de opción, aunque no están reglamentados en nuestro

---

[12] Resaltamos que el cuerpo legal vigente en el momento que las partes contrataron era el Código Civil del 1930.

Código Civil, sí ha sido reconocido jurisprudencialmente y nuestro más alto foro lo ha definido como sigue: "el convenio por el cual una parte (prominente) le concede a otra parte (optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal". *Mayagüez Hilton Corp. v. Betancourt,* 156 DPR 234, 246 (2002). En otras palabras, este contrato es un contrato preparatorio o precontrato encaminado al eventual otorgamiento de un contrato de compraventa. Ahora bien, los elementos esenciales de este contrato son: (1) se le concede al optante la facultad de decidir unilateralmente si celebrará el contrato principal (compraventa) sin ninguna obligación por parte de éste; (2) dicha concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción; y, por último, (4) no existe otra condición que no sea la voluntad del optante. *SLG Irizarry v. SLG García,* 155 DPR 713, 722 (2001).

El ejercicio de la opción no es otra cosa que la aceptación de la oferta de venta, la cual equivale para el comprador a su promesa de pagar el precio pactado. M. J. Godreau, *La opción de compra en Puerto Rico,* 53 Rev. Jur. UPR 578 (1984). El pacto de opción tiene que definir la oferta que habrá de mantenerse vigente con todos los elementos de una oferta final y completa del contrato de compraventa. Íd., pág. 596. Es decir, para que estemos ante un verdadero pacto de opción, no pueden quedar por negociar términos o condiciones del contrato de compraventa que sean de importancia para las partes. Íd.

**-B-**

Los contratos en los que concurran los requisitos de consentimiento, objeto y causa pueden anularse siempre que adolezcan de algunos de los vicios que los invalidan conforme a la ley. En lo pertinente al caso ante nos, si el consentimiento de una

parte contratante es viciado por dolo, error, violencia o intimidación, ello puede darle lugar a la anulabilidad del negocio. *SLG Ortiz-Alvarado v. Great American*, 182 DPR 48, 62 (2011). Particularmente, el dolo, como vicio del consentimiento, se da cuando uno de los contratantes, mediante palabras o maquinaciones insidiosas, induce al otro a celebrar un contrato que, sin tales palabras o maquinaciones no hubiera hecho. Art. 1221 del Código Civil, 31 LPRA sec. ant. 3408. A tales efectos, el dolo se considera un complejo de malas artes, contrario a la honestidad e idóneo para sorprender la buena fe ajena, generalmente en propio beneficio. Íd., pág. 63.

En nuestro ordenamiento jurídico hay dos tipos de dolo, a saber, el dolo grave o causante y el dolo incidental. El dolo grave produce la nulidad del contrato y es el que motiva a celebrar el contrato, que, de tal modo, sin el mismo, el contrato no se hubiese otorgado. *Bosques v. Echevarría*, 162 DPR 830, 836 (2004). En cambio, el dolo incidental no produce la anulación del contrato y solo da lugar a la indemnización por los daños y perjuicios. Art. 1222 del Código Civil de Puerto Rico, 31 LPRA sec. ant. 3409. Específicamente, este último facilita la celebración del contrato, y, por ende, en esta instancia, el contrato de todas formas se hubiese celebrado, pero no bajo las mismas condiciones. *Colón v. Promo Motor Imports, Inc.*, 144 DPR 659, 667 (1997).

Por último, la responsabilidad de probar que en efecto se constituyó un vicio de consentimiento mediante dolo, le corresponde a quien reclama la conducta dolosa. Íd., pág.668. El dolo no se presume, sin embargo, ello no significa que se tenga que probar directamente. Íd., pág. 669. Este puede establecerse mediante inferencia o por evidencia circunstancial. Íd. En síntesis, le corresponde a quien efectúa el reclamo de dolo probar la falta intencional o de mala fe de la persona a quien se le imputa toda vez

que la buena fe se presume. *Citibank v. Dependable Ins. Co., Inc.*, 121 DPR 503, 519 (1988).

**-C-**

El Art. 1210 del Código Civil, 31 LPRA sec. ant. 3375, dispone que las partes contratantes tienen el deber recíproco de actuar con buena fe. La buena fe debe permear todo el proceso de contratación desde sus fases iniciales durante la negociación del contrato y durante la fase de su cumplimiento. *Ortiz Brunet v. El Mundo*, 169 DPR 332,340 (2006). Además, impone deberes especiales de conducta de acuerdo con la naturaleza de la relación jurídica y con la finalidad perseguida por las partes a través de ella. Íd. Particularmente, la buena fe les impone a las partes un deber de lealtad recíproca en las negociaciones en el tratar, el proceder honrado y leal. Íd. Supone también el guardar la fidelidad a la palabra dada y no defraudar la confianza, ni abusar de ella; conducirse como cabe esperar de cuantos, con pensamiento honrado, intervienen en el tráfico como contratantes. Íd.

**-D-**

El Art. 1224 del Código Civil, 31 LPRA sec. 3422, dispone que no podrán ser objeto de contrato las cosas o servicios imposibles. De ahí que, a diferencia de la imposibilidad sobrevenida o posterior de la prestación, la imposibilidad originaria o inicial no provoca la extinción de la obligación, sino que impide su nacimiento. J. Puig Brutau, *Fundamentos de Derecho Civil*, 4a ed. rev. Ed. Bosch 1995 Vol II, pág. 355. La doctrina hace una distinción entre la imposibilidad inicial objetiva y la subjetiva. Según la doctrina, esta diferencia cobra importancia cuando tal imposibilidad ya existe al momento de establecerse el vínculo obligacional. Sobre ello, Puig Brutau expone lo siguiente:

> La imposibilidad inicial *objetiva* será, generalmente, perceptible por todos [...], por lo que no podrá dejar establecida entre las partes ninguna clase de relación

fundada en el mismo contenido de la promesa. En cambio, la imposibilidad también inicial pero *subjetiva* no es tan fácilmente perceptible por la otra parte y será normal que el Derecho conceda protección a quien sin culpa suya ignora que la prestación debida es precisamente imposible para el obligado. [...].

Esta diferencia entre la imposibilidad *inicial* objetiva y subjetiva la comenta Larenz de la siguiente manera: "...el contrato que tiene por objeto una prestación imposible es nulo porque desde un principio carece de finalidad, de sentido y de objeto...No puede razonablemente contarse con obtener una prestación que objetivamente no puede ser cumplida por nadie; pero sí cabe contar y confiar en que aquel que se ha obligado a cumplir una prestación posible, estará en condiciones de cumplirla. Por consiguiente, tiene sentido y está plenamente justificado el imponer a quien se obliga una especie de garantía legal de su posibilidad subjetiva de prestación (en el momento de asumir la obligación); mas al contrario, al legislador le parece excesiva – y con razón – la exigencia de tal garantía para la posibilidad objetiva de la prestación...". Aunque la ley, dice el mismo Larenz, puede regular una responsabilidad por culpa en el caso de imposibilidad objetiva, lo hará exclusivamente para la "indemnización del interés de confianza y no del interés de cumplimiento". En cambio, si la imposibilidad inicial es subjetiva, la ley puede imponer "una garantía legal e incondicional para la posibilidad de cumplir la prestación en el momento en que se asume". José Puig Brutau, *op. cit.*, pág. 356-357.

Por su parte, la imposibilidad sobrevenida presupone la existencia de una obligación válida, cuya prestación fue originalmente posible, pero por causas imputables al deudor o no atribuibles a éste, adviene posteriormente irrealizable. *Double AA Prop. Corp. V. E.L.A.*, 109 DPR 235, 238 (1979). En lo pertinente, el Art. 1138 del Código Civil, 31 LPRA sec. 3193, establece que, también quedará liberado el deudor en las obligaciones de hacer, cuando la prestación resultare legal o físicamente imposible. Entiéndase, que el cumplimiento imposible posterior de una obligación se produce cuando examinadas las circunstancias en que se firma un contrato y las circunstancias en que luego de debe cumplirse resulta que su cumplimiento posterior no es posible por la sobreviniencia de ciertos hechos que no existían al momento de

contraerse la obligación. *Rodríguez v. Municipio*, 75 DPR 479,490 (1975).

Según puede desprenderse de su propio texto, dicha imposibilidad es una defensa que invoca el deudor frente a su acreedor para verse liberado de la obligación. Como se ha señalado, para que el deudor, en una obligación de hacer, quede relevado sin que se le adjudique responsabilidad por ello, es preciso que éste no sea culpable de la imposibilidad legal o física sobrevenida. José Puig Brutau, *op. cit.*, pág. 364. A su vez, para determinar si la imposibilidad sobrevenida de una prestación produce la extinción de la obligación, debe tomarse en consideración: (1) que el obligado esté exento de culpa del incumplimiento; (2) que una serie de circunstancias, ajenas al obligado, han sobrevenido para hacer el cumplimiento imposible; (3) que las cosas objeto del contrato no puedan ser restituidas en especie a la parte que sufragó su precio dentro de un tiempo razonable; (4) que el obligado no haya asumido directamente el riesgo de cualesquiera nuevas circunstancias que puedan impedir el cumplimiento. Íd., a la pág. 492.

**-E-**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA. Ap. V, R. 36, tiene el propósito primordial de proveer una solución justa, rápida y económica en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015).

Particularmente, la Regla 36.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2, permite que cualquier parte presente una moción, basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o alguna parte de la reclamación. *Municipio de Añasco v. ASES et al.,* 188 DPR 307, 326

(2013). Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". Íd.

Solicitada la sentencia sumaria basada en declaraciones juradas o en documentos admisibles en evidencia, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Por el contrario, dicha parte tiene que refutar los hechos alegados y sustanciar su posición con prueba consistente en contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente. Íd. Es decir, esa persona viene obligada a enfrentar la moción de su adversario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. Regla 36.3 de Procedimiento Civil, *supra*; *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013).

Ahora bien, según estableció el Tribunal Supremo en el caso *Verá v. Dr. Bravo*, 161 DPR 308, 334-335 (2004), los foros revisores utilizarán los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sobre el particular, en *Meléndez González et al. v. M. Cuebas,* supra, pág. 118, el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-*

*Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el TPI aplicó correctamente el derecho. Véase, además, *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

Del mismo modo, el Tribunal Supremo ha reiterado que a menos que existan circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto y que la apreciación de la prueba se distancie de la realidad fáctica o esta sea inherentemente imposible o increíble, el tribunal apelativo deberá abstenerse de intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad hechas por el juzgador de los hechos. *Flores v. Soc. de Gananciales,* 146 DPR 45, 49 (1998). En otras palabras, las determinaciones que hace el juzgador de los hechos no deben ser descartadas arbitrariamente ni tampoco deben sustituirse por el criterio del foro apelativo, a menos que de la prueba admitida surja que no existe base suficiente que apoye tal determinación. *Rolón v. Charlie Car Rental Inc.,* 148 DPR 420, 433 (1999).

III.

En el presente recurso, Oriental impugnó una *Sentencia* que el TPI dictó y notificó el 6 de mayo de 2024. Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Solicitud de Sentencia Sumaria* que presentaron los apelados y No Ha Lugar a la *Moción de sentencia sumaria* que presentó Oriental. En consecuencia, declaró Ha Lugar la *Demanda.* Específicamente en su primer señalamiento de error, Oriental planteó que el TPI erró al pasar por alto el contrato de opción para la propiedad de Astralis, así como el contrato de opción

para la propiedad de Le Rivage, en los cuales se establecía que, ante la imposibilidad de llevar a cabo la compraventa, el único remedio disponible era la devolución de la prima. Por otra parte, en su segundo señalamiento de error, sostuvo que el TPI erró al pasar por alto que tanto el contrato de opción de Astralis, como el contrato de opción de Le Rivage, vedaban a que los apelados pudiesen recurrir a la vía judicial para procurar remedios que por disposición contractual no tenían disponibles. Por último, en su tercer señalamiento de error, argumentó que el TPI erró al no tomar en consideración diversos hechos incontrovertidos presentados por Oriental en su moción de sentencia sumaria, los cuales evidenciaban la imposibilidad para realizar la compraventa para la propiedad en Le Rivage y la aplicación de la devolución de la prima como único remedio contractual.

Previo a discutir los señalamientos de error antes reseñados, cabe precisar que, al momento de revisar la concesión de una solicitud de sentencia sumaria, nos encontramos en la misma posición que el TPI. Así pues, en primer lugar, debemos evaluar si al presentar la solicitud de sentencia sumaria y su oposición las partes cumplieron con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra*, y con los dispuesto en *SLG Zapata-Rivera v. J.F. Montalvo, supra*. Al evaluar los escritos presentados por las partes resolvemos que, en esencia, ambas cumplieron con los referidos requisitos. Es decir, Oriental presentó un listado en párrafos enumerados de los hechos que considera no estaban en controversia y especificó la página o párrafo de la prueba en que se apoyaba. De igual forma, los apelados presentaron la cita de los párrafos que entendieron que estaba en controversia y para cada uno detalló la prueba que lo sustenta. Resuelto lo anterior, nos corresponde evaluar si existen hechos materiales en controversia que nos impidan dictar sentencia sumaria. *Veamos.*

En su dictamen el TPI realizó cuarenta y siete (47) determinaciones de hechos que no estaban en controversia las cuales procederemos resumir y a adoptar en su totalidad. El 18 de mayo de 2017, Scotiabank de Puerto Rico, ahora Oriental, y los apelados firmaron un contrato titulado *Contrato de Opción de Compra* sobre la propiedad sita en el condominio Astralis, apartamento 815, Carolina, Puerto Rico. El precio de compraventa convenido fue de $180,000. A su vez, se estableció que la prima de la opción era $5,400.00. Así pues, el 18 de mayo de 2017, Nice Realty suscribió un cheque de $5,400 a favor de Scotiabank, ahora Oriental, que se entregó en el acto. Entiéndase, los apelados entregaron el cheque para ejercer la opción con la intención de otorgar la escritura de compraventa. En febrero 2019, Scotiabank estuvo en comunicación con los apelados sobre el estado procesal de las propiedades opcionadas.

En lo pertinente a la controversia ante nuestra consideración, el contrato de opción establecía cinco (5) circunstancias que podrían constituir justa causa para dejar sin efecto el contrato y con ello devolver la prima. Entre estas circunstancias se encontraba la siguiente:

> (iv) ocurre la imposibilidad de cerrar la compraventa por causa de la VENDEDORA. En este caso, la OPTANTE podrá elegir entre aceptar una extensión del término de la opción, o exigir la devolución de la Prima, renunciando expresamente la OPTANTE a entablar cualquier tipo de reclamación a la VENDEDORA por no haberse podido completar la compraventa de la Propiedad.[13]

No obstante lo anterior, el 5 de mayo de 2020, la mencionada propiedad fue transferida o cedida a un tercero a pesar de esta estar

---

[13] La cláusula cuarta, inciso c del referido contrato disponía que: [e]n caso de que proceda la devolución de la prima conforme a lo dispuesto anteriormente, la suma entregada por la OPTANTE por este concepto le será devuelto como remedio único y exclusivo para toda y cualquier reclamación que pudiera tener la OPTANTE contra la VENDEDORA por cualquier concepto incluyendo si la venta de la Propiedad a la OPTANTE no se consuma o no cierra dentro de los límites establecidos en este Contrato por causas atribuibles a la VENDEDORA.

opcionada por Scotiabank —ahora Oriental Bank—, a los apelados por \$119,527.00. Este tercero procedió al poco tiempo a vender el inmueble a otro comprador por el precio de \$299,000.00. Obteniendo de esa venta una ganancia de \$119,000.00.

De otra parte, el 19 de marzo de 2019, Scotiabank de Puerto Rico —ahora Oriental Bank—, y Nice Realty, otorgaron contrato de opción de compra sobre la propiedad ubicada en el condominio Le Rivage, apartamento 7-S, Condado, Puerto Rico. El derecho de opción exclusivo fue por un precio de compra de \$220,000.00. Con la otorgación del contrato de opción, los apelados entregaron un cheque de gerente de \$6,600.00 como consideración a la opción de compra. Cónsono con lo anterior, los apelados ejercieron de inmediato su opción, dado que estaban prestos a otorgar la escritura de compraventa. Particularmente, en el contrato se establecieron cinco (5) circunstancias que podían constituir justa causa para dejarlo sin efecto y con ello devolver la prima. Entre estas circunstancias se encontraba la siguiente:

> (iv) ocurre la imposibilidad de cerrar la compraventa por causa de la VENDEDORA. En este caso, la OPTANTE podrá elegir entre aceptar una extensión del término de la opción, o exigir la devolución de la Prima, renunciando expresamente la OPTANTE a entablar cualquier tipo de reclamación a la VENDEDORA por no haberse podido completar la compraventa de la Propiedad.

La cláusula 4(c) del Contrato de opción expresa lo siguiente:

> c. En caso de que el proceso de venta de la propiedad no se pueda completar por causas atribuibles a la VENDEDORA la devolución de la Prima a la Optante constituirá el remedio único y exclusivo para toda y cualquier reclamación que pudieran tener la OPTANTE contra la VENDEDORA por cualquier concepto como resultado del incumplimiento de la VENDEDORA.

Desde el día del otorgamiento los apelados estaban realizando gestiones con Scotiabank y posteriormente directamente con Oriental para el otorgamiento de las escrituras de compraventa. Cabe señalar, que la propiedad sita en el condominio Le Rivage,

apartamento 7-S, fue ejecutada y la escritura de venta judicial fue otorgada el 26 de febrero de 2019, según surge de la escritura número 7 sobre venta judicial ante el notario Leo M. Irizarry Román.

Sin embargo, el 2 de marzo de 2021, el Sr. Ernesto Corchado, en representación de Nice Realty, envió una carta a la Sra. Glenda González de Oriental en la cual subrayó su deseo de actualizar el contrato de opción de la propiedad Le Rivage. Sin embargo, el 15 de junio de 2021, la Sra. María M. Cotto Febo, *Special Assets Administration Supervisor* de Oriental, le remitió una carta a Nice Realty en la que indicó que la compraventa del apartamento 7-S no se podía realizar y que por ello estaría devolviéndole el depósito. A su vez, la señora Cotto Febo indicó que tan pronto estuviese disponible la propiedad, Oriental estaría dispuesto a escuchar una nueva oferta. Así las cosas, Oriental procedió a devolverle a Nice Realty el cheque de $6,600 entregado por concepto de prima, pero Nice Realty se negó a aceptarlo.

Luego de revisar la totalidad del expediente, examinado los argumentos de ambas partes y aquilatada la prueba documental que obra en el expediente, concluimos que no existe hechos sustanciales en controversia que nos impida dictar sentencia sumaria. Por tal motivo, solo nos resta determinar si en efecto, procedía condenar a Oriental al pago de $119,000.00 por la propiedad ubicada en el condominio Astralis, apartamento 815. Además, si procedía condenar a Oriental a vender la propiedad ubicada en el condominio Le Rivage, apartamento 7-S, según se pactó en el contrato de opción. *Veamos.*

Por estar estrechamente relacionados entre sí, discutiremos los señalamientos de error en conjunto. Según el precitado derecho, mediante el contrato de opción una parte le concede a otra, el optante, la facultad de decidir unilateralmente si celebrará el contrato principal (compraventa) sin ninguna obligación por parte

de éste. Particularmente, dicha concesión tiene carácter de exclusividad y, se establece un plazo para ejercitar la opción. Por último, no existe otra condición que no sea la voluntad del optante. *SLG Irizarry v. SLG García*, supra, pág. 722.

Por su parte, la doctrina de la imposibilidad sobrevenida presupone la existencia de una obligación válida, cuya prestación fue originalmente posible, pero por causas imputables al deudor o no atribuibles a éste, adviene posteriormente irrealizable. *Double AA Prop. Corp. V. E.L.A.*, supra, pág. 238. En lo pertinente, el Art. 1138 del Código Civil, *supra*, establece que, también quedará liberado el deudor en las obligaciones de hacer, cuando la prestación resultare legal o físicamente imposible. *Rodríguez v. Municipio*, supra.

Cónsono con lo anterior, el cumplimiento imposible posterior de una obligación se produce cuando examinadas las circunstancias en que se firma un contrato y las circunstancias en que luego debe cumplirse resulta que su cumplimiento posterior no es posible por la sobreviniencia de ciertos hechos que no existían al momento de contraerse la obligación. Íd., a la pág. 490. Así pues, para que el deudor, en una obligación de hacer, quede relevado sin que se le adjudique responsabilidad por ello, es preciso que éste no sea culpable de la imposibilidad legal o física sobrevenida. José Puig Brutau, *op. cit.*, pág. 364.

Cabe precisar que ambos contratos eran claros al establecer los escenarios en lo cuales se consideraba justa causa para la resolución del contrato. Específicamente la cláusula cuarta de ambos contratos disponía las causas para la terminación del contrato de opción. En lo pertinente, ambos contratos disponían que una de las causas para resolver el contrato era la imposibilidad de cerrar la compraventa por causas de la vendedora. En dicho caso, el contrato establecía que la optante, en el caso ante nos, los apelados, tenían como único remedio la devolución de la prima.

Además, estaban vedados de presentar un pleito por la vía judicial en contra de Oriental.

No obstante, la venta del apartamento 815 del condominio Astralis a un tercero no la podemos interpretar como la imposibilidad de cerrar la compraventa por parte de Oriental. Por el contrario, la venta a un tercero, la consideramos como un acto intencional y voluntario por parte de Oriental, para no llevar a cabo el contrato entre las partes. Ello, en contravención al carácter de exclusividad que permea en los contratos de opción.

Asimismo, respecto al apartamento 7-S del condominio Le Rivage, quedó demostrado que Oriental advino dueño de dicho apartamento el 26 de febrero de 2019, es decir, previo a firmar el contrato de opción el 19 de marzo de 2019. Además, del expediente surge las múltiples comunicaciones entre Oriental y los apelados para conocer el proceso legal de las propiedades. Sin embargo, Oriental remitió una carta a los apelados, en la cual les advirtió que existía un problema con el lanzamiento y, por ello, no podía culminar el proceso de compraventa. Tampoco nos parece una causa justificada para no llevar a cabo dicho contrato. Por ello, determinamos que Oriental no poseía causa justificada para no llevar a cabo los contratos según pactados.

Nótese que para que el deudor, quede relevado sin que se le adjudique responsabilidad, es preciso que no sea culpable de la imposibilidad sobrevenida. Por tanto, colegimos que la venta del apartamento a un tercero no relevó de responsabilidad a Oriental, toda vez que fue un acto intencional por su parte. A su vez, el único procedimiento que faltaba por culminar era completar el lanzamiento del condominio Le Rivage, por lo que no procedía resolver el contrato. Nótese, que los apelados nunca se desentendieron del acuerdo y, reafirmaron a Oriental en varias ocasiones que deseaban comprar la propiedad. Por todo lo anterior,

colegimos que Oriental le correspondía conceder a los apelados el derecho de exclusividad de ambas propiedades.

En vista de lo anterior, concluimos que las actuaciones por parte de Oriental no justificaban como único remedio la devolución de la prima. No podemos olvidar que, de acuerdo con el artículo 1077 del Código Civil, 31 LPRA sec.3052, la facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe. El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. [...]. De otra parte, el Tribunal Supremo de Puerto Rico resolvió que, si el consentimiento de una parte contratante es viciado por dolo, error, violencia o intimidación, ello puede darle lugar a la anulabilidad del negocio. *SLG Ortiz-Alvarado v. Great American*, supra, pág. 62. Particularmente, el dolo incidental no produce la anulación del contrato y solo da lugar a la indemnización por los daños y perjuicios. Art. 1222 del Código Civil de Puerto Rico, *supra.*

A su vez, el Art. 1210 del Código Civil, *supra*, dispone que las partes contratantes tienen el deber recíproco de actuar con buena fe. La buena fe debe permear todo el proceso de contratación desde sus fases iniciales durante la negociación del contrato y durante la fase de su cumplimiento. *Ortiz Brunet v. El Mundo*, supra, pág. 340.

Tras un estudio del expediente ante nuestra consideración, consideramos que Oriental actuó de maneral dolosa y de mala fe, toda vez que tenía conocimiento del contrato de opción que otorgó con los apelados. Adicionalmente, Nice Realty se mantuvo en comunicación con Oriental para dar seguimiento al proceso legal de las propiedades. No obstante, Oriental decidió otorgar un contrato de compraventa y vendió el apartamento 815 del condominio Astralis a un tercero. Asimismo, se negó a vender la propiedad del

condominio 7-S por presuntos problemas referentes al lanzamiento de la propiedad. Así pues, colegimos que no actuó incorrectamente el TPI al ordenar la venta del apartamento 7-S del condominio Le Rivage y obligar al pago de $119,000 pactado en el contrato por el apartamento 815 del condominio en Astralis, en concepto de daños.

Por otra parte, concluimos que los apelados no renunciaron a su derecho a incoar una reclamación en contra de Oriental, dado que estos vendieron de manera intencional y voluntaria el apartamento a un tercero. Es decir, el contrato de opción era claro en cuanto a las causas por las cuales los apelados podían reclamar. Sin embargo, dicho contrato no vedaba que los apelados pudiesen reclamar cuando se incumpliese el contrato por voluntad o intención de Oriental. Nótese, que la cláusula cuarta, únicamente, contemplaba el escenario en que por imposibilidad Oriental no pudiese vender la propiedad. Por tanto, estos podían reclamar mediante la vía judicial. Por todo lo anterior, determinamos que el primer y segundo señalamiento de error no se cometieron.

Por último, cabe precisar que, del expediente no surge ninguna evidencia documental, aparte de la carta que remitió Oriental, que acredite que el problema del lanzamiento era uno mayor, el cual imposibilita llevar a cabo la compraventa del apartamento Le Rivage. A tenor con los fundamentos antes esbozados, colegimos que el tercer error formulado por Oriental no fue cometido. Por tal motivo, el TPI no erró al declarar No Ha Lugar a la moción de sentencia sumaria que presentó el apelante. Consecuentemente, resolvemos que el foro apelado correctamente dictó sentencia sumaria parcial.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones